The Honorable Judges of the United States Court of Appeals in and for the Seventh Judicial Circuit. Hear ye, hear ye, hear ye. All persons having business before this honorable court are admonished to draw near and give their attention as the court is now sitting. God save the United States and this honorable court. Good morning ladies and gentlemen. We are ready to hear argument in the case of Jimenez-Aguilar against Barr. Before we begin, I need to remind you that we are on a call rather than in person, and there are always risks of cross-talk or people not being able to hear one another. If that comes up, as it occasionally does, I'll ask everybody to be quiet for a moment until we can get back on top of things. But normally, this process has been fairly smooth. I will try to keep time and will let you know when, say, two minutes remains or rebuttal time begins. Ms. Espinosa. Good morning, your honors, and may it please the court. This case presents an important question relating to the immigration judge's abdication of a mandatory duty to inform aliens of available relief for which they appear eligible. The mandatory duty is contained in the regulation at 8 CFR 1240.11A2 and specifically addressing asylum and withholding of removal at subsection C1. And that subsection states, if the alien expresses fear of persecution or harm, the I.J. shall inform. Again, the word shall obviously denotes the mandatory nature of that duty, and the court has requested supplemental briefing to address what harm within this subsection of the regulation means and the context in which it should be read. So I want to address that first. Harm, the ordinary meaning that we give to a word that is not defined by the regulation itself or by statute, such as this one, is ordinary meaning. And harm is defined as physical or mental damage. But we look at the context in which it's written as well. So here there are three important indicators that I would like the court to consider. First, we're talking about the fear of harm, not that harm has actually occurred, but that the actual person has a fear of harm. And that goes into the subjective aspect of having fear. Two, it's important to consider that the regulation went beyond saying persecution. Persecution is a word of legal significance. And while we do not have it defined by statute or regulation, we do have a large amount of case law addressing what may or may not constitute persecution. And that's a multifaceted assessment of the level of harm, the pervasiveness, the timing of it, country conditions, whether it's connected to an enumerated ground, and several other factors. Therefore, that word carries a lot of legal significance, which at this juncture of the proceeding, where the alien does not know about asylum, does not know about withholding or removal, has not been given an opportunity to apply, and much less an evidentiary hearing on the merits of those applications would be almost impossible for the court to adjudicate. Ms. Espinoza, can I ask a question? This is Judge Barrett. This is my concern. So in interpreting that word harm, it can't be that we're just looking at the ordinary meaning, you know, in the dictionary definitions, because as you pointed out, we need to consider the context. And in this context, aren't we considering the kind of harm that would qualify one for either asylum or withholding of removal? And you know, harm in those contexts has a particular meaning, you know, of persecution or torture. And here we're talking about asylum, right? So I mean, I think there are two issues. One would be the threshold definition of harm, and then second would be whether your client – whether what he said at the hearing met that standard. But if we could just address that first one, do you not think that harm should be narrowed in light of the kinds of relief about which the IJ would be advising him? And that's precisely what I'm explaining. In the context of the regulation, I still have a few more things to say about that. But harm at this juncture in and of itself is difficult to analyze. So that is why the regulation specifically says persecution or harm broadening type – the type of fear that the alien can bear so that the immigration judge's duties trigger. It doesn't mean – it doesn't force the alien then to actually apply for asylum. And it doesn't mean that the immigration judge will then find that it meets the definition of persecution and then grant asylum. This is only the lowest threshold level to say they need to know that asylum exists and they could possibly apply for it. So the threshold is very low. And actually, every court that has considered this language and this mandatory duty has shown, including this one, including the Southern Circuit, has shown that the threshold is actually very low. For example – Well, I don't think that's quite right. What about the Fifth and the Ninth Circuit? It seems like they've required a little bit more. Well, I actually disagree, Your Honor. I do want to address some mischaracterizations of holdings that I see in the government's brief, the supporting brief at page 5. They talk about Enrique Cordova and Valencia. And I think it's important to clarify what the actual holdings of both of those cases are because they actually support Kishner's argument in this case that the threshold is very low because it's only meant to trigger the advisal. And there's a presumption of effectiveness, meaning the regulation must be interpreted in a way in which it achieves the purpose, which is protect the rights of aliens. Again, their own ignorance or, again, the mistakes of their attorney. That's – every court that has addressed this, including the Seventh Circuit in Asani and also the Ninth Circuit in Moran Enriquez, have held that. So starting with Enrique Cordova, again, the mischaracterization of the holding is very clear at page 5 of the government's brief. But that case actually deals with voluntary departure, pre-conclusion voluntary departure. And the case actually holds that an immigration judge has a duty to advise any and all aliens of the ability to apply for pre-conclusion voluntary departure so long as the record does not contain evidence that the person has an aggravated felony conviction. So if you can see from that holding, the onus is really put on the immigration judge to look at the facts of the case. And if there's no indication that the person is an aggravated felon, aggravated felons cannot apply for voluntary departure, then there's a mandatory and absolute duty to advise. And the Board of Immigration Appeals in this presidential decision goes on to say this is precisely because this regulation is meant to protect the rights of aliens. And therefore, to accord due process to the aliens, we need to inform them of this right prior to even taking pleadings. And so – and that was because this was pre-conclusion voluntary departure. So the case actually supports that. Moving on to Valencia, which is a case that was also cited by the government, and I think that that is a case that the court was probably referring to. Valencia is distinguishable from this case and is perhaps really the only case by the Ninth Circuit in which they deny relief addressing the mandatory duty to inform. And the Valencia case was seeking a blanket due process claim of the duty to inform when there was absolutely no indication whatsoever of fear of harm. And indeed, during the proceedings in appeal before the Board of Immigration Appeals and in the petition for review, the petitioner, Ms. Valencia, never stated that she actually feared. So we have an individual in that case that has absolutely no fear. She's just making a blanket argument that she should have been advised when there was absolutely no indication. And she actually doesn't bear a fear of harm. So it's completely distinguishable. But other cases by the Ninth Circuit, like Moran Enriquez, on which this court has relied a number of times, says, if an alien fails to advise, if the immigration judge fails to advise an alien of an avenue of relief potentially available to him, we will remand for consideration of the alien's eligibility for that relief. Specifically in that case, Moran had entered the country with a visa, IR-1, and that simple entry with that type of visa triggered the duty to advise him of a waiver, a 212-H waiver in that case, because the standard is high upon the immigration judge, someone who is well-acquainted with immigration law, and what can be gleaned from the facts from the immigration judge who's supposed to be well-acquainted with immigration law. And so simply by having that type of visa entry, IR-1, which referenced that he entered as an immediate relative of a U.S. citizen, triggered the judge's duty to advise him of that potential relief. Let me ask you a question about your client's testimony before the IJ. Which part of it do you think is most important for having triggered the duty? What if he said, you know, I'm afraid to go back and afraid to have my daughters visit me in Honduras because there is a lot of crime there? Would that be enough to trigger it, or are you specifically focused on his reference to his mother's pending asylum application because of her duties in the neighborhood like this? I think the latter. I think the fact that he was saying that my family and my mother and my brother fled, but there was also a lot of other evidentiary documents submitted that talk specifically about the death threats to him and that his life run at risk of death. And so the duty of the immigration judge is... This is Judge Rosner. And I take it you're also thinking about the two relatives who already had been murdered. Three of them. Yes, Your Honor. So they're... Oh, three. Let me go over those facts briefly. I would have a 10-year-old... Counsel, you have four minutes left. Okay. Thank you, Your Honor. 10-year-old who was shot and murdered, the bullet went through his jaw, destroying his face, and he died. That one was a crossfire. But the other two murders that are even more relevant do state that the gangs were targeting his family. There was a drive-by shooting of his cousin, two persons together, and they were specifically being targeted by the gang. They killed him. Then his uncle, who owns a tire shop and who was with a young helper at the time, was killed outside, shot in the face by the gang. So not only do we have a testimony about this incident, we have a death certificate. We have the letter saying the gangs are after our family and they're gonna kill Jimenez Aguilar. They're gonna kill the petitioner. So there is really almost an overwhelming indication here that there is a fear of harm for this person, and he's talking about it, and the judge knew. The judge's own statement shows that she knew this related to a fear of harm because she says, how is this relevant to cancellation of removal? We have that at AR 227. And she then has the attorney move on with a different line of questioning. So she knew at that point that he was talking about fear of harm, and she had a duty at that point to discharge for duty to notify him of the ability to apply for asylum and withholding of removal. She's failing that duty, and that is sufficient basis to grant this petition for review. I will say briefly, because I do want to leave some time for rebuttal, that independent, that's sufficient basis to grant this petition for review. But independent of that, there's also a very strong claim of ineffective assistance of counsel. It's clear here that the applications were not filed and that the representation was deficient. Under matter of LOSADA, the only prejudice that has to be showed for this type of claim, and I quote verbatim, is that the deficient performance prevented the alien from reasonably presenting his case. In this case, that's exactly what happened here. The deficient performance of former counsel prevented him from presenting his case. And on those basis, independently and also together, but independently, it's also sufficient basis to grant this petition for review. I will reserve the rest of my time for rebuttal. Thank you. Thank you, counsel. Ms. Wellhoff. Good afternoon, your honors. Ann Wellhoff, a respondent, U.S. Attorney General. I first want to start out by saying that the petitioner's counsel has made a big point of the fact that this regulation went beyond just saying persecution, but it also said or harm. I think that the very reason that it did so is because the aliens can't be expected to use legal buzzwords when they're describing their case. That is a legal term of art that judicially has been, you know, given a multifaceted definition. Ms. Wellhoff, I was struck by the fact that your supplemental brief did not tell us what the board understands by the word harm or the whole phrase persecution or harm. Has the board ever discussed the meaning of that phrase? I don't believe that the board has parsed out a separate definition for the word harm. I didn't locate a decision where I felt it did that. I do believe that it uses persecution or harm because an alien is very unlikely to come in and testify. Wait, wait, wait, excuse me. Has the board ever said anything like, we use the phrase persecution or harm because, and then there's something in the because clause. The fact that you may believe there's something in the because clause is interesting as a lawyer's view, but we have to interpret what the board thinks. So has the board ever explained why that phrase was used? I did not locate a case where I felt it did so squarely as you asked the question. Then don't you think it's about time that they did? I think that the board has repeatedly stated that a parent eligibility, which is part of that regulation and is specifically, it contains that same regulation, contains a more general statement that I shall inform the alien of his or her apparent eligibility, apply for any of the benefits enumerated in this chapter, which includes withholding and asylum. The potential eligibility, the very fact that the immigration judges do have expertise in immigration law, and I think Patricia emphasized that quite a bit, they're intimately acquainted with what is persecution under immigration law. I think he really needs to open his ears and listen to what's going on before him in the courtroom and needs to listen if there is any possibility that, I mean, let me give you one example. I know many people were granted TPS after the earthquakes in Central America. I'm sorry, I didn't hear what you said. Many people were granted what? Okay, I'm sorry. I'm trying to use that as an example. Many people from El Salvador and other parts of Central America came here after severe weather situations and earthquakes, for example. What if the alien told the judge, I don't want to go back. It's a very earthquake-prone area. I might get harmed. I mean, obviously, the judge, that's harm in the absolute isolated sense in the definition under the law. Why don't we talk about where the petitioner testified unambiguously that he felt he had no safe place to live in Honduras, that three relatives already had been killed, that his the country because of specific threats, that he was under a threat of being murdered should he return. I am trying very hard to understand how the board concluded that his statements do not reflect the facts, or that the IJ's duty was not triggered by what he said. I am really having difficulty. Well, to address your question, Your Honor, and also to take issue with one point made by petitioner's counsel, I don't believe there's any evidence in this particular record of any specific targeting at all. I believe there is evidence that this petitioner fears random violence in Honduras. For example, he specifically testified that his cousin had been killed about 18 months before he had gone to the United States. His attorney asked him, how did your brother or cousin die? He said, in a drive-by. They were killed. He was killed and his friends. O'Brien asked the petitioner, do you know if he was being targeted for some reason? And petitioner responds, no, I don't know. That's administrative record 226. Regarding his other, I believe it was his uncle that owned a tire shop, Mr. O'Brien asked the petitioner, how about your uncle? How did he die? I'm looking at the same page, administrative record 226. He was in a car. He owned a tire business. And when they got him out of the car, he was shot and this other young man. I believe that he was confused. He was being confused by someone else. And died right there. Look, members. Counsel, can I shift gears and counsel, can I shift gears and ask you a question about a targeted to gangs? Excuse me. Excuse me. We have too many people trying to talk at once. Judge Rogner. Oh, thank you. Membership in a family that is being targeted by gangs can be a basis for asserting an asylum claim. That's WGA versus session. That's 900 Fed Third 957 at 965 to 67. That is the second. That is the Seventh Circuit. 218. I will respond. Your Honor, I have scoured this particular administrative record. I do not see any compelling, much less evidence at all of family being targeted here. In fact, Mr. O'Brien asked repeatedly, why were these people killed? Not only did the petitioner repeatedly say, I don't know. He just said, this place is riddled with crime. And that's a fact. There's a lot of rampant crime. There's a lot of rampant crime. But his mother and brother have fled. They are seeking asylum. I'm sorry. There's no evidence in this record. As to the nature or basis of petitioner's mother's claim. There just isn't. He did say she was seeking asylum. And Mr. O'Brien asked, well, why? And he said, oh, the same reason. A lot of gangs. Well, the basis is that she was the treasurer of the police watch organization. And these people are being murdered. I respectfully do not believe the evidence supports the finding that his particular family, which would be a social group, in this case, doesn't involve social groups at all. I don't believe the evidence supports that at all. In fact, I think Mr. O'Brien gave Jimenez an extensive opportunity to get out. I'm sorry. I think I didn't hear what your honor was saying. I don't think there was a question. But I've been trying to ask one. Yeah. Counsel, you are about 30 seconds from expiration. But Judge Barrett has a question to ask. And here's a bit of advice in advance. As long as a judge is asking questions, you can keep giving answers. So Judge Barrett. It is what I hope is a pretty straightforward legal question. There's been a lot of talk in the case. And in the board opinion, there was a reference to it that ACFR 124011A2 talks about a duty to inform when an alien is apparently eligible for release. But as I read that regulation, it seems that portion of the regulation, as opposed to the C1 portion, which I think we're dealing with here in asylum, A2 really deals with those who are seeking adjustment to LPR status. Is that right? So it would not be applicable here? Well, as I noted in my supplemental brief, it's contained under a laundry list of different types of release. But it does broadness language to the entire under this chapter, which does encompass all forms of release. And I think that... No, no, no, no, no. I think you're... I mean, I understand that A2, the broader... I understand that the duty to inform the kinds of release that one might be eligible for is broader. But that particular provision is just getting at those who are applying for lawful permanent residence status, correct? As opposed to the C that we're dealing with here. It's irrelevant, except with context, right? I'm sorry, Your Honor, it's irrelevant, but I didn't hear the last part. So that particular provision is irrelevant, except in so far as it might provide some context. It's not directly applicable here. I would respectfully disagree. I believe that it specifically talks about any benefit enumerated in this chapter. Why it was placed in that particular location, I can't answer, but it has all the cases that have applied when the duty is triggered does use the same language of apparent eligibility. Otherwise, every time an alien expressed a fear of harm of any nature, what if they have a particular dispute with someone in their family over nothing to do with their political opinion or another protected ground, and they don't want to go back because they're afraid their family's mad at them. I mean, the immigration judge doesn't have to listen to that and go, he might get harmed and I need to warn him about asylum because it's wholly inapplicable. I think you got to put some trust... The immigration judge is the one, the expertise. He needs to listen. When he hears about harm in general, maybe he doesn't hear the buzzword persecution, but his ears need to be open and he needs to... If in fact, there's anything about the nature of the harm that would subject their eligibility, then the duty is triggered and barring that, I don't think there's any precedent or even reason to impose that upon the immigration judge. Harm of any nature, of any reason, would simply be burdensome and beyond the... It would be an undue burden really to just keep advising... Ms. Wilhelm? Let me interrupt again. I misread the clock earlier. You still have two minutes left. Thank you. Should I address another question or I can... Continue speaking? Well, I don't hear any questions, so... Okay. I believe that the use of the word persecution or harm, harm... Again, the alien can't be expected to use the legal buzzword, but the immigration judge needs to know that if there's some harm discussed that may implicate some... It doesn't have to be a full-on recognition the person's eligible, but if there's some... Something in the record evidence, in anything the alien says in the evidence that might suggest reasonable possibility of eligibility, then the duty is triggered. But barring that, to require that any time an alien says, I don't want to go back because I might be harmed for whatever reason, that I don't believe that's a reasonable interpretation of that regulation. I do believe that the cases so far have applied the apparent eligibility in A2 provision, which says that there's apparent eligibility for any, that's a pretty broad word, of the benefits enumerated in this chapter. The duty is triggered. It would have been better if they had put it in the flesh language at the opening or the bottom. It's not there, but I don't... Unfortunately, I wouldn't say, even if you want to call it somewhat floppy drafting, it is clearly on the cases that respondent has cited, been applied throughout the chapter as stated, only where there is some suggestion. The integration judges have the expertise to listen. As well have. Thank you. Your time has expired. Thank you. Ms. Espinosa, you have about a minute and a half remaining. Thank you, Your Honor. It would be absurd to say that if a gang wants to kill me and my family, that is not a personal fear of harm, rather than just a generalized type of harm. Of course, he didn't know every fact about the family situation because he had not been prepared or given an opportunity to apply for asylum. In fact, his affidavit and even the response from his former counsel say that he wasn't prepared for that relief, but his family members obviously know and his mother gave almost a full account for relief. It turns out she was actually recently granted asylum, so her claim is definitely a good one. And more importantly, I do want to address something. I think Judge Easterbrook had asked whether the board had ever addressed this and not specifically see one in any detail, but what they have said about the entire portion of the regulation is in order, the intention of it, in order to accord full due process to all aliens who may be eligible, in that case it was for voluntary departure, the immigration judge must notify all aliens who are apparently eligible for the available voluntary departure, in this case, pre-conclusion. So the board has addressed what the intention of this regulation is, and that is precisely to advise, to err on the side of advising, and I will note further that it's kind of been missed here. The burdensome floodgates argument has been rejected by this court and this court in LA. Thank you very much for your time. Thank you. Case will be taken under advisement and the court will be in recess. Thank you.